Case No. 24-1319. United States of America v. Charles Edward Littlejohn at Balance. Ms. Goetzel for the balance, Mr. Wayne for the equivalent. Good morning. Good morning. May it please the court, Celia Goetzel on behalf of Charles Littlejohn, and I'd like to reserve 2 minutes for rebuttal. So, can you speak up? Yes, Mr. Littlejohn asked this court to vacate his sentence and remand the case to a different district court judge for re-sentencing. The procedure that the court undertook in this case was highly irregular and required the parties to recreate unrecorded proceedings for this appeal. The recreated record shows plain procedural error that the district court determined Mr. Littlejohn's sentence should be the statutory maximum before he ever appeared in court before there was any public record at all in the case, and thereby deprived him of a fair and individualized sentencing as due process required. We know that the district court predetermined the sentence because it initiated and held two off-the-record meetings without her predetermination and also her partiality and bias because when you make... I just need to follow that argument. The judge asked you whether you were making an argument and you said no. That's your 11C5 argument. That the judge was required to hold these proceedings on the record. Oh. If she was considering a change in the plea. Isn't that what they asked? Sorry, I misunderstood your rule 11C5 question. We do believe the judge was supposed to consider... She was not allowed to have off-the-record proceedings, and the fact that she held off-the-record proceedings is evidence of her predetermination. We have not brought an independent rule 11. When you said rule 11, I thought you were referring to her participation in plea discussions, which was completely improper. We're not bringing an independent rule 11, like she violated rule 11 by participating in plea discussions because he doesn't want to undo his plea. He has never challenged his guilt. He was always going to plead guilty and always accepted responsibility. So, but we do think she violated rule... I suppose we didn't make the argument that she violated that her holding off-the-record proceedings were in and of themselves, error, requiring reversal, but we do think that they are, because they just demonstrate that she approached sentencing backwards and that the proceedings were fundamentally flawed from the inside. So, isn't the standard of review for this claim of judicial predetermination, do we review this for plain error? We do think that that is the standard of review, and we think that the error is plain because, as the court said in Abney, a violation of a clearly established legal norm is plain error. And here, it violated a clearly established legal norm to determine someone's sentence before ever meeting them, before there's any 3553A analysis or information about that in the record. I hear that the district court obviously expressed some very strong feelings about Mr. Littlejohn's conduct, but what is the best evidence that it's clear or obvious that there was predetermination? I mean, the district court can ask about the plea deal, can probe what the government was doing, trying to assess Mr. Littlejohn's, the extent of his cooperation. I mean, these things are all part of determining an adequate or an appropriate sentence. Sure, and they're supposed to be done on the record, and criminal proceedings should be all transparent and on the record. And the fact that they were not done on the record is evidence that there was some wrongdoing here, because otherwise, these proceedings would have been on the record. You must know, all right, since you're in the public defender's office, that judges often have off-the-record conversations, at least district court judges. All right?  I've never seen an opinion that says that that alone is evidence of judicial misconduct or wrongdoing, particularly when you're not faking an argument that you're entitled to relief under the rules. So, in my experience, when judges do things off the record, it is purely logistical or for scheduling purposes. Well, my experience is it sometimes goes further than that. I did a lot of litigation involving the district court judges here. I practiced in the district court for a number of years, and I never experienced anything substantive taking place off the record in this district court in my time here. And normally, substantive proceedings are supposed to be held on the record. The defendant is supposed to be there. He has a right to be there. Mr. Littlejohn didn't waive any right or invite any error here. But your whole argument, as I understand it in response to Judge Rao, is that the mere fact it was off the record indicated the judge had predetermined the sentence. Is that a lead here? We're not saying that that alone indicated that the judge predetermined the sentence. Well, she had strong views, as Judge Rao mentioned. Right. I mean, she also emailed the parties before sentencing, soliciting authority to give the statutory maximum. She accepted and thanked Congress for sending a letter asking for the statutory maximum off the record and never docketed the letter or her favorable response to it. At the sentencing hearing, she said multiple times that she was, quote, trying to help the government. So we just think the totality of the circumstances in this case show predetermination. Maybe I'm as guilty as she is, but most of the things you said I have done on this court and I've seen my colleagues do as well. One is to give the parties a heads up in anticipation of a hearing or an oral argument about what questions I might ask, especially if it's something that hasn't been adequately briefed. So it's not at all unheard of for us to issue an order saying the party should be prepared or argument to say, you know, is there any precedent to support X proposition? And that seems to me like what she did in asking, you know, is is it per se unreasonable to impose the statutory maximum for someone who has accepted responsibility? One of the last things you mentioned where she said to the government trying to help you here, it's not at all uncommon that I'll ask a question to an attorney and maybe they'll kind of answer it in a way where I think they think they have to be defensive. And I'll just say, this is this is a friendly question. I don't don't don't take my question as hostile just because I'm here on a bench and I'm asking you the question. The correct answer to my question may well help your client. Those are things that I see all the time. I don't think that there are signs of a judge who has kind of predetermined the answer to a legal question. Well, your honor, you just said that if you had questions and wanted a party to prepare for oral argument, you would issue an order asking the parties to be prepared to address a certain question here. The court sent an email. It was the Saturday before sentencing, and she never docketed the question at the hearing. She never even put the question on the record or or made any indication. She had said the parties should or should whether she should or should not have taken a more formal approach to giving the parties notice about the legal question that was on her mind. I'm not sure that the formality of her approach. I'm not sure why the formality of her approach indicates prejudging the answer to the question. What's the what's the link you're seeing between formality and prejudging when you get an email as a defense attorney that says why. That says, tell me why I can't give the statutory maximum. It indicates to you the judges giving the statutory maximum. So the substance she was. Considering giving the statutory maximum and obviously she needs to explain the move to the statutory maximum. And so she's thinking about that, and she says, she's thinking about it and then she goes through the 3, you know, 3, 55. 3 factors, I mean, we just submit that everything that was done off the record here and also her statements at sentencing her. Interrogating of the government about his charging decision, both on and off the record just shows that she had. She did not approach sentencing with an open mind. She approached it backwards with her end goal in mind, and then spent the proceedings trying to justify the sentence. In addition, we argue she procedurally aired by basing her upward variance on factors already accounted for in the guidelines. And so, for this offense level, the base offense level was 9 and 2 levels were added for his abuse of trust and use of a special skill. And she also added 2 levels for obstruction for the way he covered up his crimes and the parties had agreed to those and ended up at an offense level of 13 after his acceptance was considered and his 0 point offender status was considered. His base offense level was 9, so his guidelines range was 4 to 10 months included, and it included all of these factors. Many factors were accounted for in that guidelines range. She then departed upward 4 levels for the number of tax returns and the substantial harm. And so that brought him back up to an offense level of 13 and a guidelines range of 12 to 18 months. The guidelines range, especially with that 4 level departure. Considered a number of factors, most significantly the thousands of records and harm to thousands of people and his background and training and use of a special skill, but the sentence that she gave was. 5 times the low end of that guidelines range, so she went from 12 months to 60 months and the guidelines had already accounted for many of the reasons that she gave suggesting that under 3553 that a district court can't consider those factors because there are guideline factors. They can't consider them again in terms of the final sentence. I mean, that would be a strange rule for this court to adopt. Well, the court has held that a court can't re, duplicate punishment. Accounted for in the guidelines without explaining why that punishment is inadequate. So here it seemed as though she didn't recognize that the 4 level departure accounted for the thousands of victims and. Thousands of tax returns and substantial harm and then instead varied. Upward 42 months for that same reason, she never explained why 4 levels weren't sufficient. To cover that conduct, and the same was true for his background and experience and many of the other factors accounted for in the guidelines range. How like 70 other questions. I, this will take a moment, but. Uh, you're I thought I thought your brief was was excellent and your presentation of your argument today. Excellent as well. And I realize to represent your client, you have to criticize the district judge the way that they you're doing. That's that's your job. So I, this is not in any way meant to be a criticism of. Of that, I was quite struck by how the district judge began the sentencing hearing struck in an impressive way. I think I'm not going to read everything from the 1st, 2 paragraphs, but I do want to. I do want to just kind of put in the, in the record some of the things she said, because I think it just makes it really, really hard. To agree with you that this is a judge who predetermined a sentence or who didn't take her sentencing job. Seriously, and in a way that considers all sides and all 3553 factors, the ones that cut in favor of a longer sentence, the ones that don't. She said she began the hearing by saying to your client, I know this may well be the worst morning of your life or 1 of them. I want, you know, that I'm sympathetic to that quarter. Miss packing. You have the worst seat in the house. I'm sorry for that. It's a, I'm a 143. I wish more than you could possibly know that we were meeting under different circumstances, because I have read the 29 letters from your friends and family and they uniformly speak to a person of immense intelligence, deep, caring and wavering loyalty. I think anyone who has read those letters knows that to call you a friend is a privilege that already handled enough sentencing to know that you can be an upstanding person and commit bad acts. Unfortunately, those 2 things are not mutually exclusive. They were, we wouldn't be here today. I'm saying this all up front because of this hearing spending quite a lot of time by setting your failures and I have to do that because in this country, in order to take away someone's liberty, a judge like me is required to set forth all the reasons for her decisions and that is important because we require full transparency again. And taking away someone's liberty, she says, I realized that this might not provide you much solace, but I want, you know, I've studied and thought and struggled deeply about your sentence. And there have been very few days since I took your plea that I have not thought about your sentence in some way. I mean, I haven't I have not heard a district judge say that in a sentence before yesterday. I brought my laptop and all the papers in here. I sat at the defense table. I sat in the seat that you're sitting in right now to do my final preparation. I worked there in particular to make it impossible for me to forget that I'm going to be responsible today for taking away someone's liberty. Someone with friends and families who love him. Someone who has repeatedly answered the call to help others whose actions were guided. However, misguided the thought was by a genuine belief doing the right thing today. However, I'm, of course, in a different chair. My responsibility is to the oath I took. What you did in targeting the sitting president of the United States was an attack on our constitutional democracy and whatever the motivation not to punish it with a firmness of purpose. There's such an attack demands. I have to say, I hope I'm never sitting in the chair that your client was. But if I were, I would want to send it to judge who thought about my case as far as it sounds like judge Ray has thought about that case and who approached it with a thoughtfulness that it seems like she had trusted. I'll give you a chance to do my. We simply disagree. We don't disagree that. She thought a lot about the case. We think that she. Approached it backwards by determining a sentence and then justifying it, which we think is clear from the record. We also just think the record contradicts the statements that she made and that her and that she misunderstood the magnitude of the offense, the nature of the offense and the magnitude of the harm. Like, this was in no way an attack on constitutional democracy and her recitation of and her. Yes, I guess the way she characterized the crime was just. Exaggerated and her recitation of her judicial oath to defend the constitution against domestic enemies and a lot of the language she used throughout sentencing comparing Mr. little John's white collar tax. Crime to bombs containing fentanyl sent to state actors and and people rating the Capitol building and other things like that. We, we think we don't disagree that she thought about the sentence. We just think the procedure she undertook was wrong. Thank you very much. Thank you. Good morning and may it please the court. Mr. Littlejohn's crime was by almost any metric extraordinary. In 2017, he sought out a position as an IRS contractor with the intent of disclosing President Trump's tax returns, and then he succeeded, disclosing those returns and the returns of thousands of other Americans in order to affect a presidential election and to affect ideological change. He harmed his many victims as he committed what he knew was a serious crime. The district court followed proper sentencing procedures, weighed the relevant sentencing factors, and concluded that he merited a statutory maximum five-month sentence. Nothing about that conclusion was procedurally or substantively unreasonable, and this court should affirm. I'd like to start off by picking up with defense counsel's predetermination argument in this case. As Judge Rao noted, that claim is reviewed for an error here today, but in any event, the record doesn't bear out a claim of predetermination, no matter the standard of review. Mr. Littlejohn has pointed to two bodies of evidence to suggest that the district court approached his sentencing proceeding with something less than an open mind before hearing his arguments and the facts presented at that hearing and deciding upon what sentence to impose. The first camp of evidence is a distorted version of a claim of pre-plea negotiation judicial pressure, but as this court's questions reflected in argument just now, there's an analytical mismatch between the claim that he seems to be advancing with regards to the Rule 11c1 issue, potentially, and a true claim of predetermination here. To be clear, the government doesn't see a Rule 11c1 violation on this record, suggesting that the district court was engaged in plea negotiations. But even if that had been the case, and there were a plain case of such judicial interference with negotiations, the remedy for that would be for Mr. Littlejohn to be able to withdraw his plea. As this court just heard, he has no interest in doing so. What he seeks to do is to transform those events through a form of legal alchemy into evidence that the district court knew from the outset what it was going to sentence him to. But that is simply an analytical mismatch. Meanwhile, what do you make of your friend on the other side's arguments that the off-the-record nature of some of these discussions was just in itself, or maybe not just in itself, but one of the primary indicators of predetermination? So two points to that, Judge Rao. I think the first point is, as Judge Rogers notes, district courts often do have off-the-record discussions with counsel about various matters in the case. Now, some of those, it is likely— That's substantive matters. Right. And I was going to say, in some of those matters, it is more advisable to have them on the record. And to be clear, I think it probably would have been advisable to have these discussions on the record. That, however, doesn't show that the district court had closed off her mind as to what the proper sentence should be in this case. Again, there's that sort of analytical mismatch. I do think it's understandable also, just kind of from a broader perspective, as to how these in-camera conversations came to occur, although I still agree that it would have been advisable to have them off the record. It's important to note that this case generated a huge amount of media attention in the district court. And Rule 11c2 contemplates that a plea agreement might be disclosed to the district court in-camera. Rule 11c5 then recognizes that the district court might reject a plea agreement in-camera. And I think, together, those give you some understanding of might have a colloquy as to the substance of the plea agreement in-camera as occurred here. So the only part that I think is even maybe inadvisable here is the fact that this wasn't done on the record. I don't think there's anything else even arguably procedurally unsound in the district court's approach. And again, the fact that this was off the record isn't evidence of predetermination, as Mr. Littlejohn would need to make out not just a claim of predetermination, but a plain case of predetermination. Other than requesting remand for resentencing for a different judge, do you understand appellant to be making a plain error argument in terms of the appearance of lack of partiality? I don't understand the appellant to have made some sort of due process judicial bias argument. I'm not talking the due process. I'm talking about the Supreme Court's view of plain error and when an appellate court can find plain error. And one of the grounds that the Supreme Court has repeatedly recognized is when the appearance of impropriety leaves the appellate court with, depending on how the appellate court frames it, a concern about the appearance of partiality and unfair predetermined violations. And as counsel says, this sentencing caused a lot of public attention. The courtroom, I gather, was packed. So I looked for that argument, but I didn't see it except in terms of why this court should send the matter back for resentencing before a different judge. And there, of course, the burden, as your brief points out, under Flaherty is very high. I concur. I haven't seen any sort of freestanding argument of that kind. For what it's worth on the predetermination point, I'd note that after the pre-plea conferences, the district court statements at every turn made clear that it had not yet made a sentencing decision. In the email that opposing counsel mentioned where the district court asked about the permissibility of a statutory maximum sentence in this case, the district court explicitly stated, I have not yet made a sentencing decision. Not only that, that email was sent after the government had filed its sentencing memorandum requesting the statutory maximum sentence in this case. So that email didn't come out of the blue. It wasn't unprompted. It was in response to the government's sentencing memorandum. Even at sentencing, the district court had questions for the government asking how can it pose the statutory maximum sentence that we sought here, given, for example, Mr. Littlejohn's cooperation with the government's investigation, his acceptance of responsibility. At bottom, the district court didn't enter this case with a closed mind. The other thing that I would discuss with this court briefly is the question as to whether the district court gave an adequate explanation for its sentence here. Think by it did. It recognized specific characteristics of Mr. Littlejohn's offense that are by any means extraordinary and are not accounted for by the guidelines range. We note several of these in our brief, but I would offer four of them for this court's consideration. First, Mr. Littlejohn's crime was ideological. It was done based on his beliefs about how this country should run. That's not a factor accounted for in the guidelines range. Second, he targeted the president. That third, his crime was willful. Now, opposing counsel noted how his background was accounted for in the guidelines range, but what it wasn't fully accounted for was that Mr. Littlejohn had nuanced, unusual professional experience with tax returns and a sensitivity to the personal information in there and the real harm that could be caused if that information was leaked to news outlets, as had occurred in this case. In other words, not only did he know that he victims, and that was also not accounted for by the guidelines. Finally, Mr. Littlejohn's crime unfolded over a series of years. He took the job as an IRS contractor in 2017 and then spent two years coming up with a complicated and technologically sophisticated means to smuggle tax returns out of the IRS without detection and provide them to two media outlets. The guidelines also did not account for that calculated and multi-year scheme. If this court has no further questions, the government's content to rest on its feet. Also happy to answer any questions. Any further questions? Okay. Thank you so much. Thank you. Ms. Goetz, I'll give you two minutes for rebuttal. Thank you. I just want to first, I just want to make two points. One is that the appearance of impropriety in this case was very strong, and it's difficult to show predetermination. No judge is going to just say, I determined your sentence is 60 months at the outset of a case. So, what we're arguing, as Judge Rogers pointed out, is that the appearance of impropriety tainted the proceedings and tainted the sentencing hearing in this case. And then our, the second point I want to make is that even if she gave, we don't disagree that she gave reasons for a variance. We think that the reasons that she gave cannot bear the weight of the magnitude of the variance that she gave. From 4 to 10, a guidelines range of 4 to 10 months to 60, that the reasons that she gave just simply couldn't bear the weight. And if the court has no further questions. Thank you. Thank you, Ms. Goetzel. Case is submitted.
judges: Rao; Walker; Rogers